OPINION
{¶ 1} James Alston appeals from a judgment of the Dayton Municipal Court, Small Claims Division, which ordered him to pay $2,250 to Lenee Rucker for conversion.
 {¶ 2} The following facts are undisputed. Rucker purchased a 1989 Pontiac Sunbird in June 1999 for $2,000 when she graduated from high school. Within the first month, the car needed a new engine. Rucker gave Alston $800 to find a new engine for the car, with the understanding that he would then install the engine. At the time Rucker took the car to Alston, it still had its temporary thirty-day tags. Because she did not have the car in her possession, Rucker never obtained permanent tags, and thus the Bureau of Motor Vehicles ("BMV") never transferred the certificate of title from the previous owner to Rucker.
 {¶ 3} In the fall, Rucker contacted Alston about the car, and he informed her that he had found an engine but could not install it because he had hurt his hand At that point, Rucker asked for her money back, but Alston assured her that he had someone else who could do the work. Rucker started school at Wright State University in the fall of 1999, taking the bus back and forth throughout the year because she did not have her car. There was apparently no contact between Alston and Rucker throughout this period.
 {¶ 4} In the summer of 2000, Rucker's mother and godfather bought her a new car. Shortly thereafter, Alston contacted Rucker and informed her that the car was finished and that she needed to pay an additional $550 for his work. Rucker refused to pay. She subsequently learned from the BMV that, shortly after she told Alston that she would not pay him any more money, someone had gone to Hamilton County and had obtained a duplicate copy of the title to the Sunbird. That person, Lawrence Morgan, then transferred the car back to Alston in exchange for another vehicle. Alston subsequently sold the Sunbird for $500.
 {¶ 5} Rucker filed a complaint against Alston seeking $3,000 in damages for Alston's failure to return her car and money. The trial court conducted a hearing on April 16, 2003. The court found in favor of Rucker and ordered Alston to pay $2,250 in damages.
 {¶ 6} Alston raises three assignments of error on appeal.
 {¶ 7} "I. The trial court erred in awarding damages to the plaintiff for conversion when she was not the titled owner of the motor vehicle."
 {¶ 8} Pursuant to R.C. 4505.04(B), no court "shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered" unless evidenced by a certificate of title, by admission in the pleadings, by stipulation of the parties, or by an instrument showing a valid security interest. There was no admission, stipulation, or secured interest in this case. Alston essentially argues that because Rucker did not have a certificate of title for the car, she had not proven that her right to the car was superior to his own. Thus, he concludes that she was not entitled to an award of damages against him.
 {¶ 9} Alston misinterprets R.C. 4505.04 and the cases that apply it. Even the cases cited by Alston recognize that R.C.4505.04 applies where parties assert competing rights or competing interests in a motor vehicle. State v. Rhodes (1982),2 Ohio St.3d 74, 75, 442 N.E.2d 1299; Grogan Chrysler-Plymouth,Inc. v. Gottfried (1978), 59 Ohio App.2d 91, 94,392 N.E.2d 1283. "R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations." Grogan Chrysler-Plymouth, Inc.,59 Ohio App.2d at 94. See, also, Hughes v. Al Green, Inc. (1981),65 Ohio St.2d 110, 115-116, 48 N.E.2d 1355. A certificate of title "is required where a plaintiff asserts a right in a motor vehicle and where a defendant's defense or claim is based on an interest in the same automobile. However, the statute's purpose terminates when the defense is not based upon some claimed right, title, or interest in the same automobile." Hoegler v. Hamper (1992),79 Ohio App.3d 280, 283, 607 N.E.2d 89, citing Grogan Chrysler-Plymouth,Inc., supra.
 {¶ 10} Alston asserted no legal right to Rucker's automobile. He did not file a lien for the value of his work on the car and therefore cannot be said to have had a valid competing interest in it. Rucker's failure to inquire about the car for several months certainly did not create an ownership interest in Alston. Moreover, by the time Alston disposed of the car, it had become apparent that there was a dispute over the amount owed and that Rucker wanted the car back. This undercuts Alston's assertion that Rucker had abandoned the car. Because Alston had no legitimate interest in the car, R.C. 4505.04 did not apply. Moreover, Alston has cited no authority for his implication that R.C. 4505.04 makes proof of ownership an element of a cause of action for conversion.
 {¶ 11} The first assignment of error is overruled.
 {¶ 12} "2. The court erred in failing to find that the plaintiff abandoned the motor vehicle and thus waived all rights, interest and claim to the motor vehicle."
 {¶ 13} Alston claims that he had established the defense of abandonment and had therefore shown that Rucker had forfeited her interest in the car.
 {¶ 14} Abandoned property is "property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment." Doughman v. Long (1987),42 Ohio App.3d 17, 21, 536 N.E.2d 394. "Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent." Davis v. Suggs (1983),10 Ohio App.3d 50, 52, 460 N.E.2d 665. It "is a total discarding of what existed or went before; and evidence thereof must be direct, affirmative or reasonably beget the exclusive inference of throwing away."Id. (Citation omitted.)
 {¶ 15} Alston did not present evidence that Rucker had discarded or thrown away all right to her car. At most, he claimed that he did not hear from Rucker "all summer" and that she did not pay any storage.[1] Alston presented no evidence that he had asked Rucker to pay storage or had notified her that the car was ready to be picked up during this period. Moreover, by the time he asked his friend to try to get title to the car, he had had a recent argument with Rucker about the balance due on her car. Rucker's protest about paying the balance did not evince an intent to abandon the car. In fact, it demonstrated an assertion of her interest in the car. Thus, Alston failed to establish a defense based on abandonment.
 {¶ 16} The second assignment of error is overruled.
 {¶ 17} "3. The court erred in awarding damages to the plaintiff for the reason that plaintiff failed to prove the value of the alleged converted property at the time of conversion."
 {¶ 18} Alston claims that no evidence was presented about the value of the car at the time of the conversion and that, as such, the trial court erred in awarding damages.
 {¶ 19} Alston correctly points out that "[t]he measure of damages in a conversion action is the value of the converted property at the time it was converted."Tabar v. Charlie's TowingServ., Inc. (1994), 97 Ohio App.3d 423, 428, 646 N.E.2d 1132. See, also, Allied Erecting and Dismantling Co., Inc. v.Youngstown,151 Ohio App.3d 16, 31, 783 N.E.2d 523,2002-Ohio-5179, at ¶ 62. Alston claims that no evidence was presented as to the value of the car in July 2001, when he gave the car to his friend.
 {¶ 20} While no evidence was presented as to the value of the car in July 2001 specifically, there was evidence from which the trial court could have made a reasonable approximation of the car's value. Rucker testified that she had paid $2,000 for the car one month before taking it to Alston. Apart from the work that Alston did on the car, the mileage and condition of the car were presumably unchanged while it was in his possession. Alston testified that the car was running well by the summer of 2001. Rucker had invested $800 in the new engine, and Alston sought to charge her $550 for the installation of the engine.
 {¶ 21} The trial court arrived at the damage award by taking Rucker's total expenditures on the car, or $2,800, less $550 for Alston's labor, in arriving at a damage award of $2,250. Considering the evidence of the original purchase price, the improvements made to the car, the elapsed time, and the usual depreciation, the trial court could have reasonably concluded that the value of the car in July 2001 was $2,250.
 {¶ 22} The third assignment of error is overruled.
 {¶ 23} The judgment of the trial court will be affirmed.
Brogan, J. and Young, J., concur.
[1] It is not clear to which summer Alston refers, as he had the car in his possession for portions of two summers.